Peter J. Rathwell (#002213)
Colleen M. Reider (#027260)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Attorneys for Creditor First Arizona Savings

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>GO WEST VENTURES LLC,<br><br>           Debtor. | Proceedings Under Chapter 11<br><br>Case No. 2:10-bk-09957-SSC<br><br>**MOTION TO DISMISS CHAPTER 11 CASE FOR BAD FAITH FILING** |

First Arizona Savings, a Federal Savings Bank ("Lender"), by and through undersigned counsel, hereby files its *Motion to Dismiss Chapter 11 Case for Bad Faith Filing* ("Motion") and moves the Court to dismiss the Chapter 11 bankruptcy proceedings captioned above for bad faith filing under 11 U.S.C. § 1112. In short, debtor, Go West Ventures, LLC ("Debtor") filed its Chapter 11 in bad faith because this is fundamentally a two-party dispute between Lender and Debtor, and Debtor has no unencumbered real property, no personal property, few unsecured creditors, no legitimate chance at reorganization, and no representation, even though Debtor is a corporation. This Motion is fully supported by the following Memorandum of Points and Authorities and all pleadings and papers on file in this case, all of which are incorporated by this reference.

//

//

//

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  FACTUAL BACKGROUND

1.  Around July 9, 2008, Debtor borrowed $269,663.00 from Lender ("Hidden Terrace Loan"), pursuant to an Interest Only Promissory Note ("Hidden Terrace Note"), a copy of which is attached hereto as **Exhibit A** and made a part hereof by reference as though fully set forth.  Said Hidden Terrace Note was secured by a Deed of Trust on real property located at Hidden Terrace Loop, Litchfield Park, Arizona, 85340 ("Hidden Terrace Deed of Trust"), a copy of which is attached hereto as **Exhibit B** and made a part hereof by reference as though fully set forth.  Together the Hidden Terrace Note and Hidden Terrace Deed of Trust are referred to as the "Hidden Terrace Loan Documents."

2.  Due to Debtor's failure to pay the obligations set forth in the Hidden Terrace Loan Documents, Lender issued a *Statement of Breach or Non-Performance and Notice of Election to Sell* on November 17, 2009, a copy of which is attached hereto as **Exhibit C** and made a part hereof by reference as though fully set forth.  Pursuant to the *Notice of Trustee's Sale* dated January 4, 2010, a copy of which is attached hereto as **Exhibit D** and made a part hereof by reference as though fully set forth, the Hidden Terrace Property was scheduled to be sold on April 8, 2010.

3.  In addition, around July 2, 2008, Debtor also borrowed $1,135,756.00 from Lender ("Cottages Loan"), pursuant to an Interest Only Promissory Note ("Cottages Note"), a copy of which is attached hereto as **Exhibit E** and made a part hereof by reference as though fully set forth.  Said Cottages Note was secured by a Deed of Trust on real property located at the Cottages at Palm Valley, Goodyear, Arizona, 85338 ("Cottages Deed of Trust"), a copy of which is attached hereto as **Exhibit F** and made a part hereof by reference as though fully set forth. Together the Cottages Note and Cottages Deed of Trust are referred to as the "Cottages Loan Documents."

4.  Due to Debtors failure to pay the obligations set forth in the Cottages Loan Documents, Lender issued a *Statement of Breach or Non-Performance and Notice of Election to Sell* on November 18, 2009, a copy of which is attached hereto as **Exhibit G** and made a part

Snell & Wilmer

—— L.L.P. ——

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

hereof by reference as though fully set forth.  Pursuant to the *Notice of Trustee's Sale* dated January 4, 2010, a copy of which is attached hereto as **Exhibit H** and made a part hereof by reference as though fully set forth, the Cottages Property was scheduled to be sold on April 8, 2010.  Together, the trustee sale for the Hidden Terrace Property and Cottages Property is referred to as the "Trustee's Sale".

5.      One day before the Trustee's Sale, Debtor filed its voluntary Chapter 11 petition ("Voluntary Petition"), thereby commencing the above-captioned case and staying the Trustee's Sale on both the Hidden Terrace Property and Cottages Property.

6.      No attorney signed Debtor's Voluntary Petition and the Debtor corporation does not have legal representation.  *See Notice to Debtor Not Represented by an Attorney*, at Docket Entry # 4.

7.      Additionally, Debtor filed its Voluntary Petition without its list of creditors.  *See Notice to Debtor(s) of Incomplete and/or Deficient Filings*, at Docket Entry # 3.

8.      On April 14, 2010, Debtor filed its *Summary of Schedules (Except Statistical Summary, I, J, and Statement of Financial Affairs)* ("Schedules") which, as indicated, did not include Schedule I, or J, or a Statement of Financial Affairs.  *See* Docket Entry # 9.

9.      Pursuant to Schedule A, Debtor's only real property consists of the Hidden Terrace Property and Cottages Property.  Debtor's Schedule B lists no personal property, and Schedule C lists no exempt property.

10.     Pursuant to Schedule D, Debtor's secured claims total $1,431,419.00.  Of that, $1,405,419.00 is debt owed to Lender, while the remaining $26,000.00 is owed to "Goodyear Com Facilities".  Debtor's Schedules contains no information indicating a current cash flow.

11.     Debtor's unsecured claims total around $65,000.00, which is owed to taxing authorities and homeowners' associations.

12.     Due to Debtor's lack of representation, this Court issued an *Order to Show Cause* why this case should not be dismissed for lack of counsel, scheduled for May 5, 2010.  *See* Docket Entry # 12.

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

13.     Due to, among other things, Debtor's failure to pay on its obligations and Lender's inability to effectuate the Trustee's Sale, Debtor is indebted to Lender in an amount not less than $1,405,419.00 (the "Indebtedness"), and interest continues to accrue daily.

## II.     LEGAL ANALYSIS

### A.     Legal Standard for a Finding of Bad Faith

Section 1112(b) of the Bankruptcy Code allows the bankruptcy court to dismiss bankruptcy filings "for cause." 11 U.S.C. § 1112(b). Courts in the Ninth Circuit have held that "cause" exists where a case is filed in "bad faith." *See In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *In re Stober*, 193 B.R. 5, 11 (Bankr. D. Ariz. 1996) (court may dismiss for bad faith filing under its inherent power to protect the legal system from abuse). The question of bad faith does not necessarily depend on a finding of the subjective intent of the debtor; rather, a conclusion of bad faith is often made based on objective evidence of a purpose outside the legitimate scope of the bankruptcy laws, such as "tactical reasons unrelated to reorganization." *See Marsch*, 36 F.3d at 828.

While the existence of bad faith "depends on an amalgam of factors," *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986), and the "totality of circumstances" should be considered, *Stober*, 193 B.R. at 11, courts "may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions." *In re Marshall*, 403 B.R. 668, 690 (C.D. Cal. 2009); *citing In re Phoenix Picadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

Some factors to consider are whether: (1) the debtor has an ongoing business to reorganize; (2) the case is essentially a two-party dispute capable of prompt adjudication in state court; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the debtor only has one asset. *St. Paul Self Storage L.P. v. The Port Authority of the City of St. Paul (In re St. Paul Self Storage)*, 185 B.R. 580 (9th Cir. B.A.P. 1995). Additionally, courts have found bad faith where a debtor files bankruptcy solely as an attempt to stay a trustee's sale. *In re Eisen*, 14 F.3d 469, 470 (9th Cir.1994) (holding that in the context of case dismissal, "[b]ad faith exists where the debtor only intended to defeat state court litigation."); *In re Silberkraus*, 336 F.3d 864

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

(9th Cir.2003) (noting in support of a finding of bad faith the debtor's filing of his petition a mere two days before the state court was to schedule a trial date in a suit against debtor for breach of contract).

Additionally, the filing of a voluntary petition by a corporation without legal representation mandates dismissal. *In re Child Life, Inc.*, 126 B.R. 51, 53 (Bankr. N.D. Ohio 1991) (dismissing Chapter 11 bankruptcy case because, in part, "the Debtor is a corporate entity that failed to obtain counsel to represent in"); *In re Bellerive Springs Building Corp.* 127 B.R. 219, 220 (Bankr. E.D. Miss. 1991) ("[I]t is axiomatic that a corporate Chapter 11 petition must be filed by a licensed attorney admitted to practice before the Bankruptcy Court."). In fact, dismissal for filing a petition on behalf of a corporation without legal representation generally is strictly applied, and the Debtor does not even have an opportunity to cure by later obtaining legal representation. *In re Video Sys. Design & Sales, Inc.*, 129 B.R. 196, 197 (Bankr. W.D. Miss. 1991) (stating that, if the petition is filed by a corporate debtor, "the entry by an attorney d[oes] not cure the impermissible filing [and] the facts in this case do not warrant any exception to a strictly legalistic treatment of the question"); *In re Global Constr. & Supply, Inc.*, 126 B.R. 573, 575 (Bankr. E.D. Miss. 1991) (dismissing case after rejecting debtor's assertion that party can cure an impermissibly filed complaint by *pro se* corporate debtor).

### B. This Case Evidences a Bad Faith Filing that Must Be Dismissed Pursuant to 11 U.S.C. § 1112(b)

When looking at the totality of the circumstances of this case, Debtor clearly filed in bad faith because this case evidences a two party dispute wherein the only real property is encumbered by liens held by Lender, there are minimal unsecured creditors, Debtor has no cash or legitimate chance at reorganization, Debtor filed its Voluntary Petition a day before the Trustee's Sale, and Debtor is not represented by counsel. Because of these factors, Debtor's Voluntary Petition should be dismissed, pursuant to 11 U.S.C. § 1112(b).

#### 1. This Case is Essentially a Two-Party Dispute

This case is a two-party dispute between Debtor and Lender, wherein Debtor is attempting to forestall the Trustee's Sale of both the Hidden Terrace Property and Cottages Property. Where

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

the "sole purpose of the filing of the Chapter 11 proceeding appears to be to frustrate the enforcement by [Lender] of the power of sale provision under [Lender's] deed of trust," it is apparent that the case is a two party dispute "which can be resolved outside of the Bankruptcy Court's jurisdiction." *In re Landmark Capital Co.*, 27 B.R. 273, 279 (Bankr. Ariz. 1983). Such is the case here, where Debtor filed for bankruptcy just one day before the Trustee's Sale. This is further supported by Debtor's lack of property. In fact, Debtor lists its only real property as the Hidden Terrace Property and Cottages Property – both fully encumbered by liens owed to Lender. Debtor lists <u>no</u> personal property. Moreover, Debtor has no substantial creditors besides Lender. According to Debtor's Schedules, the bulk of its claims – $1,405,419.00 – are owed to Lender. The remaining claims, which are less than $90,000.00, are owed to taxing authorities or homeowners' associations.

All of these facts, including Debtor's failure to indicate any current cash flow, demonstrate Debtor's inability to effectuate any sort of reorganization of its business. Rather, Debtor's only relationships are with Lender and homeowners' associations – both of which the Debtor has failed to make payments to. Accordingly, this case is fundamentally a two-party dispute between Debtor and Lender and properly belongs outside the jurisdiction of this Court.

## 2. <u>Debtor Has Consistently Failed to Meet Filing Requirements</u>

Since filing for bankruptcy protection on April 7, 2010, Debtor has consistently failed to meet filing requirements. For example, Debtor's Voluntary Petition failed to include a list of creditors. Although Debtor filed its Schedules one week later, the Schedules were incomplete – Schedule I and J were missing and Debtor completely failed to include its Statement of Financial Affairs. In fact, more than fourteen days has passed since Debtor filed its Voluntary Petition, and Debtor has still failed to file its Schedule I, J, or Statement of Financial Affairs. Lastly, despite being a corporation, Debtor does not have representation. Clearly, Debtor filed its Voluntary Petition on the eve of the Trustee's Sale as a "tactical maneuver, knowing that the court process is lengthy and sometimes slow, designed to gain more time and distance in an effort to wear down its exhausted secured creditor into some type of settlement submission." *In re Tucson Prop.*

*Corp.*, 193 B.R. 292, 300 (Bankr. D. Ariz. 1995). These are exactly the types of factors that evidence a bad faith filing; therefore, Debtor's Chapter 11 case should be dismissed.

**III.    CONCLUSION**

The filing of this case was a tactical step to stay the Trustee's Sale at the expense of the Debtor's largest creditor. This is clearly a two-party dispute between Debtor and Lender, as evidenced by Debtor's lack of real and personal property, minimal amount of unsecured creditors, lack of cash flow or legitimate chance at reorganization, and Debtor's failure to file a complete Statement of Financial Affairs, nor obtain representation. Ninth Circuit law declares that filing a case under such circumstances constitutes bad faith and warrants dismissal. For those reasons, and for all other reasons outlined in this Motion, Lender requests that the Court dismiss this bankruptcy case on the grounds of bad faith.

DATED this 29th day of April, 2010.

SNELL & WILMER L.L.P.

By:    /s/ Colleen M. Reider #027260
Peter J. Rathwell
Colleen M. Reider
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Attorneys for First Arizona Savings

COPY of the foregoing served by
U.S. Mail or electronic notification
this 29th day of April, 2010, to:

Go West Ventures LLC
9742 East Hidden Green Drive
Scottsdale, AZ 85262
Debtor Pro Se

U.S. Trustee
230 N. 1st Avenue, Suite 204
Phoenix, AZ 85003

Chad P. Miesen, Esq.
Carpenter, Hazlewood, Delgado & Wood, PLC
1400 E. Southern Avenue, Suite 400
Tempe, AZ 85282
Attorneys for The Village at Litchfield Park Association, Inc.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
— L.L.P —
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

First Arizona Savings
17015 N. Scottsdale Road, Suite 150
Scottsdale, AZ  85225

Goodyear Community Facilities General District No. 1
Palm Valley 1996
190 N. Litchfield Road
Goodyear, AZ  85338-0900

Maricopa County
301 West Jefferson Street
Phoenix, AZ  85003

Palm Valley Community Center Association, Inc.
c/o AAM, LLC
7740 N. 16th Street #300
Phoenix, AZ  85020

Palm Valley Community Center Association
c/o Suncor Development Company
Attn: Jeffrey V. Romaine
80 East Rio Salado Parkway, Suite 410
Tempe, AZ  85281

Palm Valley Community Center Association, Inc.
c/o Carpenter Hazlewood Delgado & Wood PLC
1400 East Southern Avenue, Suite 400
Tempe, AZ  85282

Palm Valley Phases II & III Community Association
c/o Suncor Development Company
Attn: Jeffrey V. Romaine
80 East Rio Salado Parkway, Suite 410
Tempe, AZ 85281

Palm Valley Phases II & III Community Association
c/o Carpenter Hazlewood Delgado & Wood PLC
1400 East Southern Avenue, Suite 400
Tempe, AZ  85282

The Village At Litchfield Park – Reserves
c/o Total Property Management
4020 N. 20th Street, Suite 219
Phoenix, AZ 85016

/s/ Beth Scott
11464949.1

- 8 -

# EXHIBIT A

# INTEREST ONLY PROMISSORY NOTE

$ **$269,663.00**          **SCOTTSDALE**               **ARIZONA**

Property Address:  **HIDDEN TERRACE LOOP**
                          **LITCHFIELD PARK, AZ 85340**

For value received, the undersigned, whether one or more, promises to pay to the order of **First Arizona Savings, a Federal Savings Bank** (The "Lender") and existing under the laws of the United States, an amount not to exceed the principal sum of $ **$269,663.00**  Dollars.  With interest thereon from the date hereof until maturity, as follows:

Interest only on the unpaid principal indebtedness shall accrue at a rate equal to **6.0000%%** per annum.   Interest only at a rate indicated above shall be payable in successive monthly installments commencing on the first day of the month following the date of disbursement of funds and on the first day of each month thereafter until the principal balance due hereunder has been paid in full.

Unless, sooner paid in full, the undersigned promises to pay all sums due hereunder on **July 01, 2011** (maturity date).  The rate of interest shall be based on a 360 day year and shall be calculated for the actual number of days that have elapsed.

All payments of principal and interest on this promissory note (the "Note") are payable in lawful money of the United States of America at the main office of the Lender at **17015 N Scottsdale Road #150, Scottsdale, Arizona 85255** or at such other place as the holder hereof may designate in writing.

Each month payment shall be credited first on interest then due and the remainder on principal, and interest shall thereupon cease upon the principal so credited.

Time is of the essence of payment.  The undersigned agrees to pay a late charge not to exceed an amount equal to five percent (5%) of any payment which is not paid within ten (10) days of the date due of such payment to cover the extra expense of handling past due payments.

I hereby certify that this is a true and exact copy of the original.

FIDELITY NATIONAL TITLE
BY:_____

Upon failure to make any payments as here in provided on or before the date due or in the event of any default under the terms of that certain Deed of Trust or

even date herewith between the undersigned, as trustor, in favor of Lender, as beneficiary, or any other document or instrument now or hereafter securing this Note, of even date herewith between the undersigned and the Lender, or any other document or instrument relating hereto, the remaining payments of principal, at the option of the holder hereof, shall at once become due and payable. After any default, and so long as such default remains uncured, at the option of the holder hereof, the unpaid principal sum hereof shall bear interest at the fluctuating rate of four percent (4%) per annum more than the Note. At such time as a judgement is obtained for any amounts owing under this Note or any document or instrument securing this Note, interest shall continue to accrue on the amount of the judgement at the rate of four percent (4%) per annum more than that Note Rate.

The entire unpaid principal balance of this Note may be prepaid, in whole or in part, at any time without premium or penalty. All prepayments shall be applied first to accrued interest and the balance shall be applied to reduce the principal balance in the inverse order of maturity.

The makers, endorsers and guarantors of this Note jointly and severally waive diligence, demand, presentment for payment, protest and notice of non-payment and of protest, notice of default, notice of acceleration, and all other notices or demands of any kind. They jointly and severally consent, without notice to them and without release of their liability, to extensions or accommodations given by the holder of this Note, to the release, modification, or exchange of any security, and to the release, in whole or in part, or any other maker, endorser, or guarantor; and they each agree to make payment without the prior resort of the holder to and security or against any other maker or endorser.

The makers, endorsers, and guarantors jointly and severally also agree to pay all costs of collection. Costs of collection include, without limitation, reasonable attorneys' fees if the Note is placed in the hands of attorneys for collection or if suit is brought, together will all court costs and other expenses incurred in the prosecution of such suit.

Notwithstanding any provision herein or in any document or instrument now or hereafter securing this Note, the contracted rate of interest shall consist of the sum of the interest rate stated herein and any rate resulting from amortizing over the loan term, any changes to obtain this loan, other charges, fees, goods, penalties, things in action, or sums of things of value by the undersigned to the holder of this Note, to the extent that such charges are considered to be interest.

Should this Note be signed by more than one person and/or firm and/or corporation, all of the obligations herein contained shall be considered joint and

INTONLY701

several obligations of each signer hereof. All assets whatsoever of each maker, endorser, and guarantor are committed to the payment of this Note, including, without limitation, separate assets, community assets, and assets held in partnership, joint tenancy in common, or other forms of whole or partial ownership.

Failure of the holder to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent default or in the event of continuance of any existing default.

Should any one or more provisions of this Note be determined to be illegal or unenforceable, such provision or provisions shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and all other provisions nevertheless shall be effective.

_____      _7/9/08_____
GO WEST VENTURES, LLC                 Date
BY: DONALD E NELSON, MANAGING MEMBER

_____      _____
                                      Date

INTONLY701

# EXHIBIT B

RECORDING REQUESTED BY

Name:

RETURN TO

Name: **FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS BANK**
Address: **17015 N SCOTTSDALE RD STE 150**
**SCOTTSDALE, AZ 85255**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20080681125  08/05/2008 01:00
22009488-14-4-4-
ELECTRONIC RECORDING

Certified To Be A
True And Correct Copy
Of The Original

FIDELITY NATIONAL TITLE

7/3 22009488

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN NUMBER: 0041067223

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 09, 2008**                    , together with all Riders to this document.

**(B) "Borrower"** is **GO WEST VENTURES, LLC, AN ARIZONA LIMITED LIABILITY COMPANY**

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
**HIDDEN TERRACE LOOP**
**LITCHFIELD PARK, AZ 85340**

**(C) "Lender"** is FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS BANK
Lender is a FEDERAL SAVINGS BANK                                organized and existing under
the laws of THE UNITED STATES                              . Lender's mailing address is
**17015 N SCOTTSDALE RD STE 150, SCOTTSDALE, AZ 85255**

**(D) "Trustee"** is FIRST ARIZONA SAVINGS          . Lender is the beneficiary under this Security Instrument.

Trustee's mailing address is **17015 N SCOTTSDALE ROAD #150, SCOTTSDALE, AZ 85255-**

**(E) "Note"** means the promissory note signed by Borrower and dated **July 09, 2008**                    . The Note states that Borrower owes Lender **Two Hundred Sixty Nine Thousand Six Hundred Sixty Three and no/100**
Dollars (U.S. $ **269,663.00**                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 01, 2011**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3003 1/01 (rev. 6/02)

ITEM 1843L1 (0207)                    *(Page 1 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

**0041067223**

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     **County**      of      **MARICOPA**      :

      [Type of Recording Jurisdiction]               [Name of Recording Jurisdiction]

LOTS 2, 25, 26 AND 27, OF THE VILLAS AT LITCHFIELD PARK, ACCORDING TO BOOK 680 OF MAPS, PAGE 9, RECORDS OF MARICOPA COUNTY.
PARCELS 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, 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, 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, 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

PARTIAL RELEASE:
$80,899.00 PER LOT PLUS ACCRUED INTEREST AND FEES

which currently has the address of          **HIDDEN TERRACE LOOP**

                                             [Street]

**LITCHFIELD PARK**         , Arizona         **85340**         ("Property Address"):
      [City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1843L2 (0207)

*(Page 2 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

0041067223

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of

RIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3003 1/01 (rev. 6/02)

EM 1843L3 (0207)

*(Page 3 of 11 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0041067223

Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1843L4 (0207)

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*(Page 4 of 11 pages)*

0041067223

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

RIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

EM 1843L5 (0207)

*(Page 5 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

0041067223

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1843L7 (0207)

*(Page 7 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0041067223

the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

GM 1843L8 (0207)

(Page 8 of 11 pages)

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

0041067223

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

EM 1843L9 (0207)

*(Page 9 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0041067223

the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

M 1843L10 (0207)    *(Page 10 of 11 pages)*

Form 3003 1/01 (rev. 6/02)
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

0041067223

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 11 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Donald E. Nelson_ _____ (Seal)
GO WEST VENTURES, LLC                               -Borrower
BY: DONALD E NELSON, MANAGING MEMBER

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Witness:                                 Witness:

_____          _____

State of ~~Arizona~~ Virginia      )
                                   ) SS
County of Loudoun                  )

The foregoing instrument was acknowledged before me this 8th July 2008            (date) by
GO WEST VENTURES, LLC  By Donald E. Nelson, managing member

┌─────────────────────────────────┐
│        TRACY LYNN GRIM           │
│         Notary Public            │                    (person[s] acknowledging):
│   Commonwealth of Virginia       │
│           312660                 │
│ My Commission Expires Nov 30, 2009│                   _____
└─────────────────────────────────┘                              Notary Public

                              My commission expires: 11-30-09

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3003 1/01 (rev. 6/02)
M 1843L11 (0207)                                                                    GREATLAND ■
                        (Page 11 of 11 pages)                    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

                                                                                   0041067223

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **9th** day of **July 2008** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS BANK, FEDERAL SAVINGS BANK**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**HIDDEN TERRACE LOOP
LITCHFIELD PARK, AZ 85340**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases

---

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3170 1/01

of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 through 3 of this 1-4 Family Rider.

_Donald E Nelson_ _____ (Seal)
                                   -Borrower

**GO WEST VENTURES, LLC**
BY: DONALD E NELSON, MANAGING MEMBER

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

**MULTISTATE 1-4 FAMILY RIDER**—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3170 1/01

# EXHIBIT C

---

## STATEMENT OF BREACH OR NON-PERFORMANCE
## AND NOTICE OF ELECTION TO SELL

---

**NOTICE: ALL INTERESTS IN THE PROPERTY WHICH ARE JUNIOR AND INFERIOR TO THAT OF THE DEED OF TRUST MAY BE SUBJECT TO BEING TERMINATED BY THE SUBJECT TRUSTEE'S SALE.**

NOTICE IS HEREBY GIVEN of the following described breach or non-performance of that certain Deed of Trust, executed by **GO WEST VENTURES, LLC**, a(n) **ARIZONA LIMITED LIABILITY COMPANY**, as Trustor, in which First Arizona Savings, a federal savings bank, is named as the original Beneficiary and Trustee, dated as of **JULY 9, 2008**, and recorded on **AUGUST 5, 2008**, at Instrument No. **20080681125**, in the Official Records of **MARICOPA** County, Arizona (the "Deed of Trust").

First Arizona Savings is the present owner and holder of the Interest Only Promissory Note dated **JULY 9, 2008**, in its original principal amount of **$269,663.00** (the "Note") executed by **GO WEST VENTURES, LLC**, as a(n) **ARIZONA LIMITED LIABILITY COMPANY**, is currently obligated to the Beneficiary pursuant to the Note.

The following breach or non-performance has occurred:

    1.    As of **NOVEMBER 13**, 2009, principal balance due and owing is **$269,663.00**, plus interest, late fees and miscellaneous fees of **$6,862.75**, totaling **$276,525.75**; and accrues at a per diem of **$44.94**, plus;

    2.    Late charges and/or default interest due on the above; plus

    3.    Legal fees and costs; plus

    4.    Payments made by Beneficiary for the protection of its security; plus

    5.    Interest on the above.

**PLUS ALL ACCRUING PAYMENTS, FEES, COSTS, TAXES, INSURANCE, ETC.**

**SEE EXHIBIT "A" ATTACHED HERETO**

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

9267689

Any and all additional breaches and non-performance and incidents or events of default which occur under the Note or the Deed of Trust after the date of this Statement, shall be deemed to be breaches, non-performances and incidents or events of default included in this Statement.

Beneficiary, hereby appoints Craig K. Williams, Esq., Snell & Wilmer L.L.P., One Arizona Center, 400 East Van Buren, Phoenix, Arizona, 85004-2202, as its attorney-in-fact for the purpose of receiving and accepting any cash required for full reinstatements of the Note and the Deed of Trust, pursuant to A.R.S. Section 33-813(A). Said attorney is directed to accept only cash, cashier's check or money order for the funds required for reinstatement of the Note and the Deed of Trust pursuant to statute and is authorized to accept said sums necessary for reinstatement only at the offices set forth above. Any additional sums due by the terms of the Note after the date hereof must be paid at the time of reinstatement.

Based upon the foregoing, Beneficiary has elected to sell or cause to be sold the Property, in compliance with A.R.S. Section 33-801, et seq.

DATED:           , 2009.

_11-17-09_

Beneficiary:

FIRST ARIZONA SAVINGS, a federal savings bank

By: _____
Name: Owen G Moorhead
Title: Senior – VP Chief Lending Officer

STATE OF AZ                    )
                               ) ss.
COUNTY OF Maricopa             )

This instrument was acknowledged before me on this 17th day of Nov. , 2009, by Owen G. Moorhead , the SR. VP/CLO , authorized agent of FIRST ARIZONA SAVINGS.

_Joanne Middlemiss_
Notary Public

My Commission Seal:
7-31-2013

JOANNE MIDDLEMISS
Notary Public - Arizona
Maricopa County
Expires 07/31/2013

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

9267689

## EXHIBIT A

Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this notice, we will assume that the debt is valid. If, within thirty days of receipt of this notice, you notify us in writing that the debt or any portion is disputed, we will obtain a verification of the debt and will mail to you a copy of such verification. The original creditor is different from the current creditor, and upon written request made within thirty (30) days of this notice, we will provide you with the name and address of the original creditor.

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# EXHIBIT D

**THOMAS TITLE & ESCROW**

*When recorded, mail to:*
CRAIG K. WILLIAMS, ESQ.
SNELL & WILMER L.L.P.
Attention: Susan R. Winterton
One Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100005004,01/05/2010 03:30
ELECTRONIC RECORDING
TL09181-2-2-2--

Re: First Arizona Savings / Go West Hidden Terrace
File No. 004-1067223
S&W File No. 34147.0139

*2 of 2*
*TL09181*

## NOTICE OF TRUSTEE'S SALE

The real property described herein will be sold, pursuant to power of sale under that certain Deed of Trust, executed by GO WEST VENTURES, LLC, an Arizona limited liability company, as Trustor, in which FIRST ARIZONA SAVINGS, a federal savings bank, is named as the original Beneficiary and Trustee, dated as of July 9, 2008, and recorded on August 5, 2008, at Instrument No. 20080681125, in the Official Records of Maricopa County, Arizona (the "Deed of Trust"), at public auction to the highest bidder at the following time, day and location: **1:30 p.m., the 8th day of April, 2010,** at the law offices of Snell & Wilmer L.L.P., One Arizona Center, 400 East Van Buren, Phoenix, Arizona.

| | |
|---|---|
| PURPORTED STREET ADDRESS OR IDENTIFIABLE LOCATION OF TRUST PROPERTY: | 14668 W. Hidden Terrace Loop, Litchfield Park, AZ<br>14527 W. Hidden Terrace Loop, Litchfield Park, AZ<br>14535 W. Hidden Terrace Loop, Litchfield Park, AZ<br>14545 W. Hidden Terrace Loop, Litchfield Park, AZ |
| LEGAL DESCRIPTION OF PROPERTY: | Lots 2, 25, 26 and 27, The Villas at Litchfield Park, according to Book 680 of Maps, Page 9, records of Maricopa County, Arizona.<br><br>Together with all buildings, improvements and fixtures thereon. |
| TAX PARCEL NOS.: | 501-68-856; 501-68-879; 501-68-880; and 501-68-881 |
| DESCRIPTION OF PERSONALTY: | All personalty and fixtures located on, or utilized in connection with, the Property and described in the Deed of Trust and relevant UCC Financing Statements. |

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

11003928.1

| ORIGINAL PRINCIPAL BALANCE: | $269,663.00 |
|---|---|

| NAME AND ADDRESS OF ORIGINAL BENEFICIARY: | FIRST ARIZONA SAVINGS<br>17015 N. Scottsdale Rd. Ste. 150<br>Scottsdale, AZ 85255 |
|---|---|

| NAME AND ADDRESS OF ORIGINAL TRUSTOR: | GO WEST VENTURES, LLC<br>Hidden Terrace Loop<br>Litchfield Park, AZ 85340 |
|---|---|

| NAME AND ADDRESS OF TRUSTEE: | CRAIG K. WILLIAMS, ESQ.<br>SNELL & WILMER L.L.P.<br>One Arizona Center<br>400 East Van Buren<br>Phoenix, AZ 85004-2202 |
|---|---|

DATED: _January 4th_, 2010.

CRAIG K. WILLIAMS, Trustee
Manner of Qualification: Member of the State Bar
of Arizona, pursuant to A.R.S. §33-803(A)(2).


SUBSCRIBED AND SWORN to before me on this _4th_ day of _January_, 2010, by Craig K. Williams.

_____
Notary Public

My Commission Seal:



OFFICIAL SEAL
SUSAN R. WINTERTON
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires May 8, 2013

2

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

11003928.1

# EXHIBIT E

July 02, 2008

# INTEREST ONLY PROMISSORY NOTE

$ $1,135,756.00      SCOTTSDALE      ARIZONA

Property Address: **THE COTTAGES AT PALM VALLEY**
**GOODYEAR, AZ 85338**

For value received, the undersigned, whether one or more, promises to pay to the order of **First Arizona Savings, a Federal Savings Bank** (The "Lender") and existing under the laws of the United States, an amount not to exceed the principal sum of $ **$1,135,756.00** Dollars. With interest thereon from the date hereof until maturity, as follows:

Interest only on the unpaid principal indebtedness shall accrue at a rate equal to 6.0000%% per annum. Interest only at a rate indicated above shall be payable in successive monthly installments commencing on the first day of the month following the date of disbursement of funds and on the first day of each month thereafter until the principal balance due hereunder has been paid in full.

Unless, sooner paid in full, the undersigned promises to pay all sums due hereunder on July 01, 2011 (maturity date). The rate of interest shall be based on a 360 day year and shall be calculated for the actual number of days that have elapsed.

All payments of principal and interest on this promissory note (the "Note") are payable in lawful money of the United States of America at the main office of the Lender at **17015 N Scottsdale Road #150, Scottsdale, Arizona 85255** or at such other place as the holder hereof may designate in writing.

Each month payment shall be credited first on interest then due and the remainder on principal, and interest shall thereupon cease upon the principal so credited.

Time is of the essence of payment. The undersigned agrees to pay a late charge not to exceed an amount equal to five percent (5%) of any payment which is not paid within ten (10) days of the date due of such payment to cover the extra expense of handling past due payments.

I hereby certify that this is a true and exact copy of the original.

FIDELITY NATIONAL TITLE

Upon failure to make any payments as here in provided on or before the date due or in the event of any default under the terms of that certain Deed of Trust or

even date herewith between the undersigned, as trustor, in favor of Lender, as beneficiary, or any other document or instrument now or hereafter securing this Note, of even date herewith between the undersigned and the Lender, or any other document or instrument relating hereto, the remaining payments of principal, at the option of the holder hereof, shall at once become due and payable. After any default, and so long as such default remains uncured, at the option of the holder hereof, the unpaid principal sum hereof shall bear interest at the fluctuating rate of four percent (4%) per annum more than the Note. At such time as a judgement is obtained for any amounts owing under this Note or any document or instrument securing this Note, interest shall continue to accrue on the amount of the judgement at the rate of four percent (4%) per annum more than that Note Rate.

The entire unpaid principal balance of this Note may be prepaid, in whole or in part, at any time without premium or penalty. All prepayments shall be applied first to accrued interest and the balance shall be applied to reduce the principal balance in the inverse order of maturity.

The makers, endorsers and guarantors of this Note jointly and severally waive diligence, demand, presentment for payment, protest and notice of non-payment and of protest, notice of default, notice of acceleration, and all other notices or demands of any kind. They jointly and severally consent, without notice to them and without release of their liability, to extensions or accommodations given by the holder of this Note, to the release, modification, or exchange of any security, and to the release, in whole or in part, or any other maker, endorser, or guarantor; and they each agree to make payment without the prior resort of the holder to and security or against any other maker or endorser.

The makers, endorsers, and guarantors jointly and severally also agree to pay all costs of collection. Costs of collection include, without limitation, reasonable attorneys' fees if the Note is placed in the hands of attorneys for collection or if suit is brought, together will all court costs and other expenses incurred in the prosecution of such suit.

Notwithstanding any provision herein or in any document or instrument now or hereafter securing this Note, the contracted rate of interest shall consist of the sum of the interest rate stated herein and any rate resulting from amortizing over the loan term, any changes to obtain this loan, other charges, fees, goods, penalties, things in action, or sums of things of value by the undersigned to the holder of this Note, to the extent that such charges are considered to be interest.

Should this Note be signed by more than one person and/or firm and/or corporation, all of the obligations herein contained shall be considered joint and

INTONLY701

several obligations of each signer hereof. All assets whatsoever of each maker endorser, and guarantor are committed to the payment of this Note, including , without limitation, separate assets, community assets, and assets held in partnership, joint tenancy in common, or other forms of whole or partial ownership.

Failure of the holder to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent default or in the event of continuance of any existing default.

Should any one or more provisions of this Note be determined to be illegal or unenforceable, such provision or provisions shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and all other provisions nevertheless shall be effective.

_____     _7/7/08_____
GO WEST VENTURES, LLC                  Date
BY: DONALD E NELSON, MANAGING MEMBER

_____     _____
                                       Date

INTONLY701

# EXHIBIT F

RECORDING REQUESTED BY

Name:

**FIDELITY NATIONAL TITLE**

RETURN TO

Name: **FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS**
Address: **17015 N SCOTTSDALE RD STE 150** _Bank_
**SCOTTSDALE, AZ 85255**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20080697616 08/11/2008 01:07
Certified To Be A 22009501-16-4-4-
True And Correct Copy ELECTRONIC RECORDING
Of The Original

_Cynthia Middleman_

3/3 FT22009501

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

**LOAN NUMBER: 0041067234**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **July 02, 2008**                          , together with all Riders to this document.

(B) **"Borrower"** is **GO WEST VENTURES, LLC, AN ARIZONA LIMITED LIABILITY COMPANY**

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
**THE COTTAGES AT PALM VALLEY**
**GOODYEAR, AZ 85338**

(C) "Lender" is **FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS BANK**
Lender is a FEDERAL SAVINGS BANK                                             organized and existing under
the laws of THE UNITED STATES                                       . Lender's mailing address is
17015 N SCOTTSDALE RD STE 150, SCOTTSDALE, AZ 85255
. Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is FIRST ARIZONA SAVINGS

Trustee's mailing address is 17015 N SCOTTSDALE ROAD #150, SCOTTSDALE, AZ 85255-

(E) **"Note"** means the promissory note signed by Borrower and dated **July 02, 2008**                    . The Note states that Borrower owes Lender **One Million One Hundred Thirty Five Thousand Seven Hundred Fifty Six and no/100**                          Dollars (U.S. **$ 1,135,756.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 01, 2011**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1643L1 (0207)

*(Page 1 of 11 pages)*

Form 3003 1/01 (rev. 6/02)
GREATLAND ▪
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

0041067234

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                    County              of            MARICOPA
                          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOTS 1 THROUGH 12, 33, 34, 37 THROUGH 40, 72, 73, 77, 78, THE COTTAGES AT PALM VALLEY, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 686 OF MAPS, PAGE(S) 39 AND AFFIDAVIT OF CORRECTION RECORDED IN RECORDING NO. 2006-0031639, OF THE PUBLIC RECORDS OF MARICOPA COUNTY, ARIZONA.
PARCELS 501-76-834 THROUGH 845, 866, 867, 870, 871, 872, 873, 905, 906, 910, 911

PARTIAL RELEASE:
$61,950.00 PER LOT PLUS ACCRUED INTEREST AND FEES

which currently has the address of                **THE COTTAGES AT PALM VALLEY**
                                                                    [Street]

          **GOODYEAR**              , Arizona            **85338**              ("Property Address"):
          [City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3003 1/01 (rev. 6/02)
                                                                                   GREATLAND ■
TEM 1843L2 (0207)                        *(Page 2 of 11 pages)*        To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0041067734

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of

ARIZONA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

ITEM 1843L3 (0207)

*(Page 3 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ▪
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

00410872 4

Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

**ARIZONA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3003 1/01 (rev. 6/02)

ITEM 1843L4 (0207)

*(Page 4 of 11 pages)*

GREATLAND ▪
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

0041087234

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1843L5 (0207)

*(Page 5 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ▪
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0041087234

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by

**ARIZONA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1843L7 (0207)

*(Page 7 of 11 pages)*

Form 3003 1/01 (rev. 6/02)
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

0041097234

the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1843L8 (0207)

*(Page 8 of 11 pages)*

Form 3003 1/01 (rev. 6/02)
GREATLAND ▯
To Order Call: 1-800-530-9393 ▯ Fax: 616-791-1131

0041067200

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects

ARIZONA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

ITEM 1843L9 (0207)                                  *(Page 9 of 11 pages)*

Form 3003 1/01 (rev. 6/02)
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

004106723

the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

**ARIZONA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1843L10 (0207)     *(Page 10 of 11 pages)*

Form 3003 1/01 (rev. 6/02)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0041087234

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 11 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Donald E. Nelson, Managing Member_ _____ (Seal)     _____ (Seal)
GO WEST VENTURES, LLC                              -Borrower                                    -Borrower
BY: DONALD E NELSON, MANAGING MEMBER

_____ (Seal)     _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                    -Borrower

Witness:                                        Witness:

_____        _____


State of ~~Arizona~~ Virginia          )
                                       ) SS
County of Loudoun                      )

   The foregoing instrument was acknowledged before me this _8th, July 2008_          (date) by
GO WEST VENTURES, LLC  _By Donald E. Nelson, managing member_

                                                        (person[s] acknowledging).

                                       _signature_
                                                        Notary Public

                   My commission expires: _11-30-09_

```
┌─────────────────────────────────────┐
│        TRACY LYNN GRIM               │
│        Notary Public                 │
│    Commonwealth of Virginia          │
│           312660                     │
│  My Commission Expires Nov 30, 2009  │
└─────────────────────────────────────┘
```

ARIZONA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3003 1/01 (rev. 6/02)
                                                                                    GREATLAND ■
ITEM 1843L11 (0207)              _(Page 11 of 11 pages)_         To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

                                                                         0041067281

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **2nd** day of **July 2008** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to **FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS BANK, FEDERAL
SAVINGS BANK**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**THE COTTAGES AT PALM VALLEY
GOODYEAR, AZ 85338**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

    **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description, and
shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for the
purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire
prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath
tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and
curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which,
including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property
described in the Security Instrument (or the leasehold estate if the Security Instrument is on a
leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

    **B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree
to or make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and
requirements of any governmental body applicable to the Property.

    **C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without Lender's
prior written permission.

    **D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

    **E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

    **F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in
writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

    **G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall
assign to Lender all leases of the Property and all security deposits made in connection with leases

---

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**       **Form 3170 1/01**

of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 through 3 of this 1-4 Family Rider.

_Donald E Nelson, Managing Member_ (Seal)
                                        -Borrower
**GO WEST VENTURES, LLC**
BY: DONALD E NELSON, MANAGING MEMBER

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **2nd** day of **July 2008** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **FIRST ARIZONA SAVINGS, A FEDERAL SAVINGS BANK, FEDERAL SAVINGS BANK**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**THE COTTAGES AT PALM VALLEY**
**GOODYEAR, AZ 85338**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as

**THE COTTAGES AT PALM VALLEY**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

**MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3150 1/01

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this PUD Rider.

_Donald E Nelson, Managing Member_ _____ (Seal)     _____ (Seal)
**GO WEST VENTURES, LLC**          -Borrower                                                -Borrower
BY: DONALD E NELSON, MANAGING MEMBER

_____ (Seal)     _____ (Seal)
                                 -Borrower                                                -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                                -Borrower

**MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3150 1/01**

ITEM 1622L2 (0011)                    *(Page 2 of 2 pages)*                    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

# EXHIBIT G

---

## STATEMENT OF BREACH OR NON-PERFORMANCE
## AND NOTICE OF ELECTION TO SELL

---

**NOTICE: ALL INTERESTS IN THE PROPERTY WHICH ARE JUNIOR AND INFERIOR TO THAT OF THE DEED OF TRUST MAY BE SUBJECT TO BEING TERMINATED BY THE SUBJECT TRUSTEE'S SALE.**

NOTICE IS HEREBY GIVEN of the following described breach or non-performance of that certain Deed of Trust, executed by **GO WEST VENTURES, LLC**, a(n) **ARIZONA LIMITED LIABILITY COMPANY**, as Trustor, in which First Arizona Savings, a federal savings bank, is named as the original Beneficiary and Trustee, dated as of **JULY 2, 2008**, and recorded on **AUGUST 11, 2008**, at Instrument No. **20080697616**, in the Official Records of **MARICOPA** County, Arizona (the "Deed of Trust").

First Arizona Savings is the present owner and holder of the Interest Only Promissory Note dated **JULY 2, 2008**, in its original principal amount of **$1,135,756.00** (the "Note") executed by **GO WEST VENTURES, LLC**, as a(n) **ARIZONA LIMITED LIABILITY COMPANY**, is currently obligated to the Beneficiary pursuant to the Note.

The following breach or non-performance has occurred:

    1.    As of **NOVEMBER 17, 2009**, principal balance due and owing is **$1,135,756.00**, plus interest, late fees and miscellaneous fees of **$29,955.46**, totaling **$1,165,711.46**; and accrues at a per diem of **$189.29**, plus;

    2.    Late charges and/or default interest due on the above; plus

    3.    Legal fees and costs; plus

    4.    Payments made by Beneficiary for the protection of its security; plus

    5.    Interest on the above.

**PLUS ALL ACCRUING PAYMENTS, FEES, COSTS, TAXES, INSURANCE, ETC.**

**SEE EXHIBIT "A" ATTACHED HERETO**

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Any and all additional breaches and non-performance and incidents or events of default which occur under the Note or the Deed of Trust after the date of this Statement, shall be deemed to be breaches, non-performances and incidents or events of default included in this Statement.

Beneficiary, hereby appoints Craig K. Williams, Esq., Snell & Wilmer L.L.P., One Arizona Center, 400 East Van Buren, Phoenix, Arizona, 85004-2202, as its attorney-in-fact for the purpose of receiving and accepting any cash required for full reinstatements of the Note and the Deed of Trust, pursuant to A.R.S. Section 33-813(A). Said attorney is directed to accept only cash, cashier's check or money order for the funds required for reinstatement of the Note and the Deed of Trust pursuant to statute and is authorized to accept said sums necessary for reinstatement only at the offices set forth above. Any additional sums due by the terms of the Note after the date hereof must be paid at the time of reinstatement.

Based upon the foregoing, Beneficiary has elected to sell or cause to be sold the Property, in compliance with A.R.S. Section 33-801, et seq.

DATED: 11-18 , 2009.

Beneficiary:

FIRST ARIZONA SAVINGS, a federal savings bank

By: _____

Name: Owen G Moorhead_____

Title: Senior – VP Chief Lending Officer_____

STATE OF Arizona )
) ss.
COUNTY OF Maricopa )

This instrument was acknowledged before me on this 18th day of Nov , 2009, by Owen G Moorhead, the Senior VP Chief Lending Officer, authorized agent of FIRST ARIZONA SAVINGS.

JOANNE MIDDLEMISS
Notary Public - Arizona
Maricopa County
Expires 07/31/2013

_____
Notary Public

My Commission Seal:
7-31-2013

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

9267689

## EXHIBIT A

Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this notice, we will assume that the debt is valid.  If, within thirty days of receipt of this notice, you notify us in writing that the debt or any portion is disputed, we will obtain a verification of the debt and will mail to you a copy of such verification.  The original creditor is different from the current creditor, and upon written request made within thirty (30) days of this notice, we will provide you with the name and address of the original creditor.

**THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# EXHIBIT H

# THOMAS TITLE & ESCROW

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100005352,01/05/2010 03:55
ELECTRONIC RECORDING
TL09182-4-2-2--

*When recorded, mail to:*
CRAIG K. WILLIAMS, ESQ.
SNELL & WILMER L.L.P.
Attention: Susan R. Winterton
One Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000

Re: First Arizona Savings / Go West Cottages
File No. 004-1067234
S&W File No. 34147.0138

*TL 09182*
*2 of 2*

## NOTICE OF TRUSTEE'S SALE

The real property described herein will be sold, pursuant to power of sale under that certain Deed of Trust, executed by GO WEST VENTURES, LLC, an Arizona limited liability company, as Trustor, in which FIRST ARIZONA SAVINGS, a federal savings bank, is named as the original Beneficiary and Trustee, dated as of July 2, 2008, and recorded on August 11, 2008, at Instrument No. 20080697616, in the Official Records of Maricopa County, Arizona (the "Deed of Trust"), at public auction to the highest bidder at the following time, day and location: **1:30 p.m., the 8th day of April, 2010**, at the law offices of Snell & Wilmer L.L.P., One Arizona Center, 400 East Van Buren, Phoenix, Arizona.

| | |
|---|---|
| PURPORTED STREET ADDRESS OR IDENTIFIABLE LOCATION OF TRUST PROPERTY: | Lots 1 – 12, 33, 34, 37 – 40, 72, 73, 77 and 78, The Cottages at Palm Valley, Maricopa County, Arizona. |
| | For further information see attached EXHIBIT "A". |
| LEGAL DESCRIPTION OF PROPERTY: | Lots 1 through 12, inclusive, 33, 34, 37 through 40, inclusive, 72, 73, 77 and 78, The Cottages at Palm Valley, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 686 or Maps, Page 39 and Affidavit of Correction recorded as 2006-31639, of Official Records. |
| | Together with all buildings, improvements and fixtures thereon. |

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

| TAX PARCEL NOS.: | 501-76-834; 501-76-835, 501-76-836, 501-76-837, 501-76-838, 501-76-839, 501-76-840, 501-76-841, 501-76-842, 501-76-843, 501-76-844, 501-76-845, 501-76-866, 501-76-867, 501-76-870, 501-76-871, 501-76-872, 501-76-873, 501-76-905, 501-76-906, 501-76-910, and 501-76-911 |
|---|---|
| DESCRIPTION OF PERSONALTY: | All personalty and fixtures located on, or utilized in connection with, the Property and described in the Deed of Trust and relevant UCC Financing Statements. |
| ORIGINAL PRINCIPAL BALANCE: | $1,135,756.00 |
| NAME AND ADDRESS OF ORIGINAL BENEFICIARY: | FIRST ARIZONA SAVINGS 17015 N. Scottsdale Rd. Ste. 150 Scottsdale, AZ 85255 |
| NAME AND ADDRESS OF ORIGINAL TRUSTOR: | GO WEST VENTURES, LLC The Cottages at Palm Valley Goodyear, AZ 85338 |
| NAME AND ADDRESS OF TRUSTEE: | CRAIG K. WILLIAMS, ESQ. SNELL & WILMER L.L.P. One Arizona Center 400 East Van Buren Phoenix, AZ 85004-2202 |

DATED: _January 4_____, 2010.

_____
CRAIG K. WILLIAMS, Trustee
Manner of Qualification: Member of the State Bar
of Arizona, pursuant to A.R.S. §33-803(A)(2).

2

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.**

11033820.1

SUBSCRIBED AND SWORN to before me on this  4th  day of January , 2010, by Craig K. Williams.

_Susan R. Winterton_
Notary Public

My Commission Seal:



OFFICIAL SEAL
**SUSAN R. WINTERTON**
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires May 8, 2013

3

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

11033820.1

| | | | | |
|---|---|---|---|---|
| 501-76-834 | 14203 | W Harvard St | Goodyear | AZ |
| 501-76-835 | 14207 | W Harvard St | Goodyear | AZ |
| 501-76-836 | 14211 | W Harvard St | Goodyear | AZ |
| 501-76-837 | 14215 | W Harvard St | Goodyear | AZ |
| 501-76-838 | 14219 | W Harvard St | Goodyear | AZ |
| 501-76-839 | 14223 | W Harvard St | Goodyear | AZ |
| 501-76-840 | 14227 | W Harvard St | Goodyear | AZ |
| 501-76-841 | 14231 | W Harvard St | Goodyear | AZ |
| 501-76-842 | 14235 | W Harvard St | Goodyear | AZ |
| 501-76-843 | 14239 | W Harvard St | Goodyear | AZ |
| 501-76-844 | 14243 | W Harvard St | Goodyear | AZ |
| 501-76-845 | 14247 | W Harvard St | Goodyear | AZ |
| 501-76-866 | 14274 | W Wilshire Dr | Goodyear | AZ |
| 501-76-867 | 12470 | W Wilshire Dr | Goodyear | AZ |
| 501-76-870 | 14256 | W Wilshire Dr | Goodyear | AZ |
| 501-76-871 | 14248 | W Wilshire Dr | Goodyear | AZ |
| 501-76-872 | 14242 | W Wilshire Dr | Goodyear | AZ |
| 501-76-873 | 14234 | W Wilshire Dr | Goodyear | AZ |
| 501-76-905 | 14210 | W Harvard St | Goodyear | AZ |
| 501-76-906 | 14214 | W Harvard St | Goodyear | AZ |
| 501-76-910 | 14230 | W Harvard St | Goodyear | AZ |
| 501-76-911 | 14234 | W Harvard St | Goodyear | AZ |

**THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**